UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

STEVEN DEAN SEPULVADO JR #736350  CIVIL ACTION NO. 24-cv-1247

VERSUS  JUDGE TERRY A. DOUGHTY

BERLIN SWEET ET AL  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Steven Dean Sepulvado, Jr. ("Plaintiff"), who is self-represented, filed this civil rights action against officials at the Sabine Parish Detention Center ("SPDC"), where he was formerly incarcerated. He names as defendants Sheriff Aaron Mitchell, Warden Berlion Sweet, and Assistant Warden KayLynn Remedies. Plaintiff's primary claims are based on an attack by fellow inmates, his medical care after the incident, his housing assignments, and his dissatisfaction with the handling of his legal mail and grievances.

Defendants filed a Motion to Dismiss (Doc. 15) that attacks the complaint, as amended, for failure to state a claim on which relief may be granted and (in some respects) for lack of subject matter jurisdiction. The defendants also assert qualified immunity. The motion was noticed for briefing in April 2025, and Plaintiff soon filed a notice of change of address. The notice was then served on Plaintiff at his new address. Plaintiff requested and was granted an extension of time, and he soon filed another change of address. A second extension of time was requested and granted through July 18, 2025. That date has passed, and Plaintiff has not filed any response to the motion despite being allowed

approximately ten weeks to do so.  For the reasons that follow, it is recommended that the motion to dismiss be granted.

**Rule 12(b)(6) Requirements**

Defendants' principal arguments are that the complaint, as amended, is subject to dismissal under Fed. R. Civ. Pro. 12(b)(6)f for failure to state a claim on which relief may be granted.  To avoid dismissal, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)).  The factual allegations must "raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1965.

**Claims for Injunctive Relief are Moot**

Plaintiff alleged in his complaint that he was jumped and beaten by fellow inmates, denied the medical treatment he preferred, not assigned the housing he desired, and was prevented from filing various grievances and medical requests.  His complaint asked for an award of $5,000 compensation for pain and suffering and that he be provided "proper medical treatment for past and current medical problems."  The latter request is for injunctive type relief, for which qualified immunity is not a defense.  Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare, 925 F.2d 844, 849 (5th Cir. 1991).

The claim for injunctive relief must be dismissed, no matter how the underlying claims are resolved, because Plaintiff's transfer to another correctional facility has made it moot.  Plaintiff's changes of address show that he left the SPDC by December 2024, about three months after he filed this action, and he has since been transferred to a facility in Rapides Parish and then to Winn Parish.  Defendants argue correctly that a prisoner's

transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison). See also Coleman v. Lincoln Par. Det. Ctr., 858 F.3d 307, 309 (5th Cir. 2017) (facility transfer mooted declaratory and injunctive claims under the RLUIPA);   Edwards v. Johnson, 209 F.3d 772, 776 (5th Cir. 2000) (claim for injunctive relief regarding prison policies and procedures was moot after defendant transferred to different facility); and Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief based on denial of food at prior jail were moot).   Any suggestion of injunctive relief based on the possibility that Plaintiff might someday be transferred back to the SPDC "is too speculative to warrant relief."  Herman, 238 F.3d at 665.

All of Plaintiff's claims for injunctive relief are moot.  The proper remedy in these circumstances, which results in a lack of subject matter jurisdiction, is to dismiss such claims without prejudice.   Salcido v. Wilson, 2022 WL 1564188 (5th Cir. 2022). Accordingly, all claims for injunctive relief should be dismissed without prejudice.

**Criminal Law Claims**

Plaintiff's complaint begins with a citation to several Louisiana criminal statutes regarding hate crimes, malfeasance in office, and the like.  Plaintiff does not specifically allege what he would like the court to do in regard to these referenced crimes, but they do not provide a basis for a civil claim by Plaintiff against the named defendants.

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard D., 93 S.Ct. 1146, 1149 (1973).

Accordingly, a prisoner who complained that a sheriff did not file criminal charges against guards who beat him failed to state an actionable claim.  Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990).  See also Lewis v. Jindal, 368 Fed. Appx. 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.").  It is recommended that any claims based on a desire to prosecute any of the defendants for crimes be dismissed.

**Failure to Discipline Other Inmates**

Plaintiff alleges that he was jumped in a cell by three fellow inmates, but "the three inmates were never charged or even punished."  Plaintiff complains that he, on the other hand, was later punished (for a reason not explained in the complaint) with lockdown and loss of store and phone privileges.

Plaintiff does not have a constitutional right to have his alleged attackers investigated, prosecuted, or otherwise disciplined.  Grizzle v. McCollum, 2023 WL 2396914, *2 (E.D. Tex. 2023).  Accordingly, Plaintiff's allegations about the lack of punishment of his alleged attackers fail to state a claim on which relief may be granted.

**Failure to Protect from Inmate Attack**

Plaintiff alleged that the SPDC "knows I was a confidential informant" for the sheriff's office and helped on several drug busts.  Plaintiff alleged that Warden Sweet and Assistant Warden Remedies nonetheless refused to protect him "and allowed me to be placed in C Dorm open population after I stated I wanted protective custody after I was jumped in a cell by three inmates and beaten bad" and rushed to the hospital.

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners.  Farmer v. Brennan, 114 S.Ct. 1970 (1994); Horton v. Cockrell, 70 F.3d 397, 400-01 (5th Cir. 1995).  Plaintiff's complaint does not indicate whether he was a pretrial detainee or convicted prisoner at the time, but the same duty applies to the Fourteenth Amendment claims of pretrial detainees.  Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc); Williams v. Bexar Cnty., 2024 WL 3326082, n. 7 (5th Cir. 2024).

Not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 114 S.Ct. at 1977.  To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  "In order to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. Id., citing Farmer.

The three defendants each assert qualified immunity in addition to their Rule 12(b)(6) challenge.  When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity.  Zapata v. Melson, 750 F.3d 481, 485 (5th Cir. 2014).  The plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.  Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

Vicarious liability does not apply to Section 1983 suits, so each official must have independently violated the nonmovant's rights. <u>Shaw</u>, 918 F.3d at 417. And it is improper to analyze a group of defendants' actions collectively in assessing qualified immunity. Each defendant's entitlement to immunity must be examined separately. <u>Meadours v. Ermel</u>, 483 F.3d 417, 421-22 (5th Cir. 2007).

Plaintiff's allegations do not state a plausible claim under this standard that can overcome the qualified immunity defense with respect to any particular defendant. The allegation is oddly worded, but its most reasonable reading is that Plaintiff did not request protective custody until "after" he was jumped by the other inmates. Defendants' motion attacked the claim based on this interpretation, and Plaintiff did not file any response in an effort to correct that understanding of his allegation.

Plaintiff did not allege that he asked corrections officials to protect him *before* the incident. He also did not allege that his prior use as a confidential informant (1) made any defendant personally aware that Plaintiff faced a substantial risk of serious harm in the dorm or (2) that any particular defendant with such knowledge was deliberately indifferent to his need for protection. Plaintiff did allege later in his complaint that "the whole jail knows I worked with multiple law enforcement agencies as a confidential informant." But there is no allegation that the inmates who jumped Plaintiff did so because of his confidential informant status. The motivation for their attack is not stated. The complaint does not state a claim for failure to protect against any of the three named defendants that is plausible under the demanding <u>Farmer</u> standard and that overcomes the qualified immunity defense.

Plaintiff's complaint also alleges that, after his post-attack complaints, he was moved to B Dorm. Plaintiff alleges that an attempt was made to put him in a cell with an aggressive DOC inmate (which Plaintiff refused), and that Plaintiff was eventually put in a cell by himself in B Dorm for about a month. An attempt was made to place him in a cell with two inmates (which he refused), and he was put on suicide watch in a hallway for a week before being returned to a cell in B Dorm and, eventually, to general population. Plaintiff alleged that the warden, assistant warden, and sheriff "refuses me protective custody and they keep placing me in dangers (sic) situation and I continue getting hurt by inmates."

Inmate classification and housing is a matter squarely within the broad discretion of prison officials, free from judicial intervention except in extreme circumstances. Wells v. Pike Cnty., 2023 WL 4473362, *3 (S.D. Miss. 2023), citing McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). Plaintiff has no constitutional right to any particular housing arrangement, so he cannot state a claim for damages under 42 U.S.C. § 1983 based on his unhappiness with his various housing assignments. His claim that he continued "getting hurt" by inmates is not sufficiently specific with respect to the motivation for any harm inflicted on him or otherwise to state a plausible claim against any defendant under the Farmer standard.

**Dissatisfaction with Medical Care**

Plaintiff dedicates much of his complaint to his dissatisfaction with the medical care he was provided while at the SPDC. His complaint does not indicate whether he was a pretrial detainee or convicted prisoner at the time, but the applicable standard to prevail on

a claim that his medical care (or lack of care) violated the constitution is the same. He must allege facts that set forth a plausible claim that one or more of the named defendants were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92.

Plaintiff alleged in his original complaint that he was jumped in a cell and beaten by three inmates. He was then "rushed to Sabine Parish Medical Center in Many LA and treated for my injuries." Plaintiff implied dissatisfaction with the care he received after the inmate attacks. The court issued a memorandum order that directed Plaintiff to file the equivalent of an amended complaint that fully explained the medical conditions about which he was complaining, the occasions he was denied medical care, who denied him medical care, and other details about his medical allegations.

Plaintiff responded (Doc. 5) with allegations that he suffered a concussion from hitting his head on the concrete when he was stomped and kicked, a blood contusion on his upper lip, nerve damage in his right knee and right ankle, and damage to a tooth. Plaintiff noted that he had been seen by the emergency room physician and that Nurse Practitioner Jerrod Rule visited the SPDC weekly.

Plaintiff was asked what medical care was denied, and he answered that Assistant Warden Remedies and Warden Sweet "kept saying for five months they were waiting on a appointment." He also claimed that he was denied treatment for PTSD, anxiety, and

depression that he developed after the attack, as well as treatment for nerve damage on his right leg.

Despite Plaintiff's complaints that he was denied care, he specifically alleged that his damaged tooth was pulled, he received X-rays and a CT scan for his leg, he received an MRI for his concussion, and he was "put on PTSD meds and nerve pain meds." Plaintiff later stated that he was put on "several medications." He stated that NP Rule, who visited the detention center every Thursday, "put me on my PTSD meds and gabapentin for nerve pain." Plaintiff also identified diclofenac (a non-steroidal anti-inflammatory that treats pain and inflammation), prazosin (often used to treat PTSD), and acetaminophen ER (an extended-release form of pain reliever).

Plaintiff did complain in the amended complaint that someone at Willis Knighton Hospital in Shreveport recommended an unspecified "muscle repair and nerve surgery on my right leg." He complained that Warden Sweet "kept refusing me my needed surgery at Willis Knighton for my right leg and mental health treatment and counseling for my PTSD." He similarly complained that Assistant Warden Remedies denied him "counseling for my PTSD" and follow-up appointments at Willis Knighton for his right leg nerve pain. He complained that Sheriff Mitchell "refused to listen to any of my complaints and family's complaints about the lack of treatment for both medical and mental health," and generally turned a blind eye to what was happening at the detention center.

But Plaintiff's own allegations indicate that detention center officials provided Plaintiff with prompt emergency room treatment at an outside hospital, followed by weekly visits with a nurse practitioner, and treatment in the form of at least four medications. Some

of the medication was specifically geared toward treating PTSD and mental health issues, but Plaintiff complains that he was not also provided counseling.  Another medication was prescribed to treat the complaints of nerve pain.

The alleged lack of counseling on top of care by a medical professional and prescription drugs does not amount to the kind of "unnecessary and wanton infliction of pain" that would trigger the Eighth Amendment.  Plaintiff may have preferred additional or different treatment, but he admits that he received fairly extensive treatment directed at his physical and mental symptoms.  His disagreement with the diagnostic measures or methods of treatment afforded by detention center officials does not state a constitutional claim for indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff alleged that someone at Willis Knighton recommended nerve and muscle repair surgery, but Plaintiff did not allege that the surgery was ordered immediately or that a lack of it during his relatively short time at the SPDC resulted in a serious medical problem or limitation.  Defendants' motion specifically challenged the lack of more specific facts about this claim, but Plaintiff did not file any timely response and attempt to show how his rather brief allegations on this matter demonstrate deliberate indifference to a serious medical need by any of the three named defendants.  The defendants cannot be said to have completely ignored Plaintiff's leg condition, as he was provided prescription medication for his nerve pain and acetaminophen as a pain reliever.  Plaintiff's allegations, taken as a whole, do not allege a plausible Eighth Amendment claim against any of the

defendants that is sufficiently stated to overcome their qualified immunity defense. All claims based on denial of medical care should be dismissed with prejudice.

**Grievances and Mail**

Plaintiff complained that the sheriff never answered his letters or returned calls made by his family. He also alleged that someone blocked his legal mail, grievances, and medical forms. Yet, he admitted that he "filed more than 30 grievances and multiple ARP forms," and even had his mother call. He complained that nothing helped or led to any change.

Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). And "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Id. at 374.

With respect to the mail complaint, a corrections official's interference with an inmate's legal mail may violate the inmate's constitutional right of access to the courts. Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993). But to state a claim that delayed mail amounted to a denial of the right of access to the courts, the plaintiff must allege actual injury. Lewis v. Casey, 116 S.Ct. 2174, 2180-82 (1996). Plaintiff does not allege that he missed a court deadline or suffered any other legal prejudice as a result of the alleged mail interference, so these allegations fail to state an actionable claim.

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 15) be granted by dismissing without prejudice all claims for injunctive relief and dismissing with prejudice all other claims against all defendants.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of August, 2025.



Mark L. Hornsby
U.S. Magistrate Judge